IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

TIMOTHY O'NEIL CHARITY,

    Petitioner,                      No. CIV S-06-0428 FCD EFB P

   vs.

THOMAS CARROLL, Warden, et al.,

    Respondents.                 FINDINGS AND RECOMMENDATIONS

_____/

     Petitioner is a state prisoner without counsel seeking a writ of habeas corpus. *See* 28 U.S.C. § 2254. Petitioner was convicted in the San Diego County Superior Court, but he presently is confined in the Delaware Correctional Center in Smyrna, Delaware pursuant to the Interstate Corrections Compact Agreement. In the petition filed February 24, 2006,[1] he challenges the July 17, 2001 and the July 20, 2005, decisions of the California Board of Prison Terms (BPT) finding him not suitable for release to parole. Respondents move to dismiss on the grounds that the challenge to the 2001 decision is untimely and he has not exhausted available state remedies with respect to all his claims challenging the 2005 decision. For the following

---

[1] The court determines the filing dates by using the dates on which petitioner signed the proof of service on his federal and state-court petitions. *See Houston v. Lack*, 487 U.S. 266, 270 (1988) (notice of appeal by *pro se* litigant deemed filed when the prisoner delivers it to prison authorities for delivery to the court); *see also Smith v. Duncan*, 297 F.3d 809, 814-15 (9th Cir. 2002) (using mailbox rule to calculate tolling).

reasons, the court finds that with respect to the 2001 decision finding him not suitable for parole the petition is untimely, and with respect to the 2005, decision, petitioner has failed to exhaust available state remedies.

## I.    Procedural History

On April 9, 1981, petitioner was convicted of second degree murder pursuant to a plea of guilty.  He was sentenced to a term of 15 years to life in prison.  He did not appeal.

On July 17, 2001, petitioner appeared before the BPT for a parole suitability hearing. That same date, he was found not suitable for release to parole.  On October 25, 2001, petitioner field a petition for a writ of habeas corpus in the trial court challenging the decision.  Resp.'s Mot. to Dism., Ex. 1.  In it, he alleged the following: (1) his plea was involuntary because no one informed him that he would not be released to parole; and, (2) the plea agreement was violated because he essentially is serving the sentence required of one convicted of first degree murder. *Id.*  On November 4, 2001, that court found that petitioner failed to demonstrate that the evidence was insufficient to support the BPT's findings, and denied relief.  *Id.*

On October 31, 2002, petitioner filed another petition for a writ of habeas corpus in the trial court seeking relief from the July 17, 2001, decision, alleging the following: (1) his plea was involuntary because he was not informed that he would not be released to parole; (2) BPT breached the terms of the plea agreement by failing to release petitioner to parole after October 15, 1995; (3) the BPT effectively has increased petitioner's sentence to that for first degree murder in violation of the *Ex Post Facto* Clause by finding him not suitable for parole because the commitment offense was calculated and dispassionate and that the victim was abused and defiled, factors relevant to punishment for first degree murder; (4) BPT violated due process by determining that petitioner was not suitable for parole based on findings not supported by the record, i.e.,  that he has a record of violence and assaultive behavior, an escalating pattern of criminal conduct, and a juvenile criminal record; (5) BPT violated due process by determining that petitioner was not suitable for parole based in part on findings not supported by the record,

i.e., that petitioner had not sufficiently participated in self-help or therapy programs and had received 10 rules violations reports; (6) Commissioners Welch and Granlund violated petitioner's right to due process by focusing on petitioner's Naval career and family background; (7) the plea was involuntary because the trial judge failed to inform petitioner that release to parole was conditioned on a BPT finding of suitability.  Resp.'s Mot. to Dism., Ex. 2.  On January 8, 2003, the court denied relief.

On April 27, 2004, petitioner again filed a petition for a writ of habeas corpus in the trial court.  Resp.'s Mot. to Dism., Ex. 3.  In it, petitioner appears to have challenged the 1990, 1992, 1994, 1996 and 2001 decisions finding him unsuitable for parole.  *Id.*  He alleged that holding him in prison beyond the maximum release date estimated for him according to California regulations violated his right to due process.  *Id.*  On September 2, 2004, the trial court found that, "[d]espite clearly worded orders that detail all the reasons why these petitions are denied, Petitioner still does not realize that this case is over and that he cannot continually file petitions for writ of habeas corpus raising the same arguments," and denied relief, "for the same reasons that the fourth habeas corpus petition was denied."  *Id.*

On an unspecified date, petitioner filed in the appellate court a document styled, "Motion of Ex Parte," challenging the Sacramento County Superior Court's decision to transfer his habeas petitions to the San Diego County Superior Court instead of reaching the merits.  Resp.'s Mot. to Dism., Ex. 4.  The appellate court treated the matter as an original petition, and denied relief on October 5, 2005.

On January 4, 2005, petitioner filed an application for a writ of habeas corpus, designated S 130413, in the California Supreme Court.  Resp.'s Mot. to Dism., Ex. 5.  In it, he challenged the July 2001 decision finding him not suitable for parole, alleging that (1) BPT breached the terms of the plea agreement by failing to release petitioner to parole after October 15, 1995; (2) BPT effectively increased petitioner's sentence to that for first degree murder by holding him in prison based on criteria used to determine the length of sentence for first degree murder; (3) BPT

3

violated his right to due process by determining he was not suitable for parole based on findings not supported by the evidence, i.e., that petitioner demonstrated a callous disregard for human life and that the victim was abused; (4) BPT violated due process by determining that petitioner was not suitable for parole based findings not supported by the evidence, i.e., that petitioner had a record of an escalating pattern of violence and criminal conduct and an unstable social history; (5) the denial violated due process because the finding that petitioner had not adequately participated in self-help or therapy programs was not supported by the evidence and because the panel disregarded positive psychological reports from petitioner's Delaware prison records; (6) BPT violated state law by considering plaintiff's participation in self-help programs and rules violations reports because these factors may only be used to grant or withhold post conviction credits; (7) Commissioners Welch and Granlund were biased against petitioner, as evidenced by the former having focused on petitioner's Naval career and "fabricat[ing] evidence" by "stating petitioner was running a loan shark operation while in the Navy," and by the latter's having focused on what the victim would have done with his life had petitioner not killed him; and, (8) the plea was involuntary because the trial judge failed to inform petitioner that in order to be released to parole, the BPT would have to find him suitable for such release. Resp.'s Mot. to Dism., Ex. 5.

On July 20, 2005, the BPT again found petitioner not suitable for release to parole. Resp.'s Mot. to Dism., Ex. 6.

On November 4, 2005, petitioner filed in case S 130413 pending in the California Supreme Court a document styled, "Motion of New Evidence: July 20, 2005 Parole Hearing." Pet.'s Opp'n, Ex. 1. In it, he argues that the "new evidence is the July 20, 2005 parole hearing, at which petitioner was given a three (3) years denial of parole release," and that the denial should be reversed. *Id.* On December 14, 2005, the California Supreme Court denied relief in case S 130413. Resp.'s Mot. to Dism., Ex. 5. There is no evidence that petitioner filed a habeas petition in state court challenging the BPT's July 20, 2005, decision.

On March 1, 2006, petitioner filed his federal petition. In it, he challenges both the July 17, 2001, and the July 20, 2005, decisions finding him unsuitable for release to parole. With respect to the 2001, decision, petitioner alleges the following: (1) the BPT violated due process and the prohibition against *ex post facto* laws by scheduling him for a subsequent hearing within three years, but not holding the hearing until four years after the denial; (2) by holding petitioner in prison since 1981 and repeatedly denying petitioner release to parole, the BPT has violated the terms of the plea agreement and converted petitioner's sentence into a life sentence for first degree murder; (3) BPT and the California Department of Corrections and Rehabilitation have breached the plea agreement by holding petitioner in prison beyond 21 years, the amount of time BPT and CDCR estimated petitioner would serve before being released to parole; (4) BPT violated his right to due process by determining he was not suitable for parole based on findings that petitioner demonstrated a callous disregard for human life, and that the victim was abused and defiled, which were not supported by the evidence and are improper considerations with respect to a prisoner convicted of second degree murder; (5) BPT violated due process by determining that petitioner was not suitable for parole based in part on a finding that he has a record of an escalating pattern of violence and criminal conduct, and an unstable social history, which are not supported by the record; and (6) Commissioners Welch and Granlund were biased against petitioner, as evidenced by the former's focusing on petitioner's Naval career and "fabricat[ing] evidence" by "stating petitioner was running a loan shark operation while in the Navy," and the latter focusing on what the victim would have done with his life had petitioner not killed him.

With respect to the July 20, 2005 hearing, petitioner alleges the following: (1) the BPT violated due process when it refused to consider psychological reports prepared by officials in the Delaware correctional system; (2) the procedures used violated due process because the denial was, as in earlier hearings, based in part on unchanging circumstances and on the recommendation of the District Attorney, whose representative appeared and displayed

5

photographs of the victim; (3) BPT violated due process by finding petitioner not suitable for parole based in part on factors related to sentencing for first degree murder, i.e., the offense was calculated and dispassionate, and that the victim was abused; (4) BPT violated due process at the July 2005 hearing by failing to discuss the criteria for suitability and instead forcing petitioner to state what kind of person he thought the victim would have been ad petitioner not killed him.

**II.     Analysis**

**A.     Timeliness of the Challenge to the 2001 Decision**

A one-year limitation period for seeking federal habeas relief begins to run from the latest of the date the judgment became final on direct review, the date on which a state-created impediment to filing is removed, the date the United States Supreme Court makes a new rule retroactively applicable to cases on collateral review or the date on which the factual predicate of a claim could have been discovered through the exercise of due diligence.  28 U.S.C. § 2244(d)(1).  With respect to a challenge to a decision finding a prisoner unsuitable for parole, the period begins to run the date the factual predicate for the claims could have been discovered. *Redd v. McGrath*, 343 F.3d 1077, 1083 (9th Cir. 2003).  When California required prisoners to exhaust their claims in the administrative grievance process, the limitation period began to run the day after the prisoner's grievance was denied on the highest level of review. *Redd*, 343 F.3d at 1084.  In 2001, California required prisoners to exhaust available administrative remedies with respect to challenges to a finding of unsuitability for parole. *See* Cal. Code Regs. tit. 15, § 2050. Neither respondents nor petitioner submits any evidence on the question of whether petitioner appealed the July 17, 2001, decision.  The trial court, however, in its November 4, 2001, order, found that there was no evidence to suggest that petitioner filed an administrative appeal. Resp.'s Mot. to Dism., Ex. 1.  Therefore, petitioner knew of the factual predicates for his claims at the time the BPT made its decision, i.e., on July 17, 2001, and the limitation period began to run the following day.  Under this analysis, petitioner had until July 17, 2002, to file a federal habeas petition.  Absent tolling, the February 24, 2006, petition is over three-and-one-half years

late.

A properly filed state post conviction application tolls the statute of limitations. 28 U.S.C.§ 2244(d)(2). In California, a properly filed post conviction application is "pending" during reasonable intervals between a lower court decision and filing a new petition in a higher court. *Carey v. Saffold*, 536 U.S. 214, 223 (2002). Petitioner's October 22, 2001, petition in the trial court entitles him to ten days' statutory tolling. Thus, he had until July 30, 2002, to file a federal petition. But petitioner's next challenge was an October 31, 2002, petition for a writ of habeas corpus filed in the trial court. The petition was filed 93 days beyond the limitations period, and cannot be found to have tolled the period. *Fergusun v. Palmateer*, 321 F.3d 820, 823 (9th Cir. 2003) (section 2244(d) does not permit re-initiation of the limitation period when it expires before a timely state petition for post-conviction relief was filed). For like reason, petitioner's subsequent petitions in state court do not toll the limitation period. Accordingly, the February 24, 2006, petition is more than three years and six months late, and it must be dismissed.

**B.     Challenge to the 2005 Decision:  Exhaustion of Available State Remedies**

As stated, respondent contends that the petition should be dismissed because petitioner has failed to exhaust available state remedies with respect to the July 20, 2005 decision. A district court may not grant a petition for a writ of habeas corpus unless "the applicant has exhausted the remedies available in the courts of the State," or unless there is no State corrective process or "circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254(b)(1). A petitioner satisfies the exhaustion requirement by presenting the "substance of his federal habeas corpus claim" to the state courts. *Picard v. Connor*, 404 U.S. 270, 278 (1971) (no exhaustion where the petitioner presented operative facts but not legal theory to state courts); *see also Duncan v. Henry*, 513 U.S. 364, 365 (1995)(to exhaust a claim, a state court "must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution"). Furthermore, the claim must be presented in a

7

procedure that enables a court to reach it. *See Castille v. Peoples*, 489 U.S. 346 (1989) (claims raised in petition for allocatur but not in state post-conviction proceedings unexhausted where review on allocatur was discretionary but review in post-conviction proceedings was not); *see also Roettgen v. Copeland*, 33 F.3d 36 (9th Cir. 1994) (presenting in habeas corpus claims cognizable only in motion for post-conviction relief pursuant to rule of criminal procedure does satisfy exhaustion requirement). A claim is unexhausted if any state remedy is available. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999) (petitioner must seek discretionary review from state court of last resort); *Roberts v. Arave*, 874 F.2d 528, 529 (9th Cir. 1988) (no exhaustion where state supreme court referred petitioner's appeal of trial court's denial of post-conviction relief to lower appellate court and petitioner failed to appeal lower court's disposition of that appeal to state supreme court). Unless the respondent specifically consents to the court entertaining unexhausted claims, a petition containing such claims must be dismissed. *See* 28 U.S.C. § 2254(b)(3); *Picard*, 404 U.S. at 275. For a California prisoner to exhaust, he must present his claims to the California Supreme Court on appeal in a petition for review or on post-conviction in a petition for a writ of habeas corpus. *See Carey v. Saffold*, 536 U.S. 214, 221-223 (2002) (describing California's habeas corpus procedure); *Gatlin v. Madding*, 189 F.3d 882, 888 (9th Cir. 1999) (to exhaust, prisoner must present claims on appeal to California Supreme Court in a petition for review).

     It is clear from the procedural history of this case that petitioner has failed to exhaust available state remedies with respect to the BPT's July 20, 2005 decision. On January 4, 2005, petitioner filed a petition in the California Supreme Court challenging the 2001 decision finding him unsuitable for parole. On July 20, 2005, the BPT again found petitioner not suitable for parole. Petitioner did not file a new habeas petition, but instead sought relief from the California Supreme in the form of a "motion" which does not appear to be authorized in the Rules of the California Courts. *See Carey*, 536 U.S. at 220. On December 14, 2005, the California Supreme Court denied relief in case S1340413. While that denial clearly is sufficient to exhaust

petitioner's challenge to the 2001 denial, the same cannot be said for the July 20, 2005, denial. Petitioner's "motion" in the already pending habeas action challenging a different decision simply did not present his challenge to the July 20, 2005, denial in a procedure that permitted the California Supreme Court to consider his allegations. There is no evidence that petitioner filed a habeas petition in the California Supreme Court challenging the 2005 decision. Therefore, petitioner has failed to exhaust available state remedies with respect to his challenge to the July 20, 2005, decision finding him not suitable for parole. Claims related to that decision must be dismissed.

**III.    Conclusion**

For the reasons explained, the court finds that the challenge to the 2001 decision finding him not suitable for release to parole is untimely, and the claims challenging the 2005 decision are not exhausted. Therefore, this action must be dismissed.

Accordingly, it is hereby RECOMMENDED that respondents' July 31, 2006, motion to dismiss be granted and the Clerk be directed to enter judgment in respondents' favor.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within 20 days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

Dated: July 31, 2007.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE